UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
SECOND DIVISION

| | |
|---|---|
| Lyon Financial Services, Inc., a Minnesota corporation, doing business as USBancorp Business Equipment Finance Group,<br><br>      Plaintiff,<br><br>vs.<br><br>Stock Development, LLC, a Florida domestic limited liability company,<br><br>      Defendant. | Civil Action No.: 09-CV-1380 (PAM/AJB) |

## ANSWER AND COUNTERCLAIM

Defendant Stock Development, LLC ("Defendant") states as follows for its Answer to Plaintiff's Complaint and for its Counterclaim against Plaintiff.

## ANSWER

1. Defendant denies each and every allegation of the Complaint unless admitted or qualified herein.

2. Admits, on information and belief, the allegations in Paragraph 1 of the Complaint.

3. Admits the allegations in Paragraph 2 of the Complaint.

4. With respect to the allegations in Paragraph 3 of the Complaint, admits that Defendant entered into a written agreement (the "Agreement") with AXSA Document Solutions, Inc. ("AXSA"), which agreement was subsequently assigned by AXSA to Plaintiff. The attachment to the Complaint served on Defendant is illegible so its authenticity cannot be admitted. A legible copy of the Agreement is attached hereto as Exhibit A and is incorporated herein by reference.

5. Denies the allegations in Paragraph 4 of the Complaint and affirmatively states that Plaintiff and AXSA have failed to fulfill their obligations under the terms of the Agreement and that

all conditions precedent to any additional payments by Defendant under the Agreement have not been satisfied.

6. Denies the allegations in Paragraph 5 of the Complaint.

7. With respect to the allegations in Paragraph 6 of the Complaint, states that the Agreement speaks for itself and denies that Plaintiff is entitled to recover its attorneys' fees, costs, disbursements, and expenses.

8. With respect to the allegations in Paragraph 7 of the Complaint, admits that Plaintiff has requested certain payments from Defendant, admits that Defendant has not made certain payments to Plaintiff, but denies that Plaintiff is entitled to the requested payments.

9. With respect to the allegations in Paragraph 8 of the Complaint, states that the terms of the Agreement speak for themselves, states that it lacks sufficient knowledge to determine the truth of any allegations about the location of Plaintiff's activities, and affirmatively states that this Court has jurisdiction of the parties and this dispute, and venue in this Court is proper.

## AFFIRMATIVE DEFENSES

10. Plaintiff's Complaint fails to state a claim upon which relief may be granted.

11. Plaintiff has failed to name an indispensable party, namely AXSA.

12. Plaintiff's losses, if any, are due to the misconduct, negligence, non-performance, default, acts or omissions of Plaintiff, AXSA, or others over whom Defendant has no control.

13. Plaintiff's claims are barred under the doctrines of waiver, estoppel, payment and unclean hands.

14. Plaintiff's claims against Defendant fail due to the failure of various conditions precedent.

15. Plaintiff's claims are subject to offset and counterclaim.

## COUNTERCLAIM

16. Defendant entered into the Agreement with AXSA and AXSA assigned the Agreement to Plaintiff. The Agreement is titled "Value Maintenance Agreement" and was intended to provide maintenance, service and supplies to Defendant with respect to a number of printers already owned by Defendant.

17. The Agreement, drafted and presented by AXSA, mistakenly and deceptively describes this transaction as a "Value Lease Agreement" whereby Defendant is purportedly renting various printers from AXSA when, in fact, there was no "rental" or "lease" of equipment or personal property intended as part of this transaction.

18. Any obligation of Defendant to make any payments under this Agreement are conditioned upon the performance by AXSA of its service, maintenance and supply obligations in connection with the printers owned by Defendant.

19. AXSA assigned its rights under the Agreement to Plaintiff, but these rights are still contingent upon and subject to AXSA's performance of its obligations under the Agreement. As assignee, Plaintiff stands in the shoes of AXSA with respect to AXSA's rights and obligations under the Agreement.

20. Defendant made all payments and performed all of its obligations under the Agreement up to the time when AXSA's default and failure to perform excused any further payments by Defendant.

21. AXSA breached the terms of the Agreement by, among other things, failing to provide required services and failure to deliver required materials.

22. AXSA also promised Defendant a $5,000 rebate/credit of amounts paid by Defendant as partial compensation to Defendant for AXSA's failure to perform. AXSA has never made that rebate payment to Defendant.

23. Defendant has been damaged as a result of the breaches by AXSA/Plaintiff of their obligations under the Agreement and the further agreement to rebate/credit $5,000 to Defendant.

WHEREFORE, Defendant requests judgment of this Court awarding it the following relief:

1. Dismissing Plaintiff's Complaint in its entirety with prejudice;

2. Awarding damages to Defendant against Plaintiff for breach of contract in an amount to be proven at trial;

3. Awarding Defendant its costs, disbursements, and attorneys' fees herein; and

4. Awarding Defendant such other relief as the Court deems just and equitable.

**HAMMARGREN & MEYER, P.A.**

Dated: June 30, 2009.

By: ___s/David D. Hammargren___
David D. Hammargren (#167538)
Jennifer A. Thompson (#0330954)
7301 Ohms Lane, Suite 360
Minneapolis, MN  55439
(952) 844-9033

**ATTORNEYS FOR DEFENDANT STOCK DEVELOPMENT, LLC**



**Value Maintenance Agreement**

APPLICATION NO. 830637 | CONTRACT NO. 128796-000

8010 Sunport Drive, Suite 110 • Orlando, FL 32809

This document is written in "Plain English". The words you and your refer to the customer. The words Owner, we, us and our refer to AXSA Document Solutions, Inc. Every attempt has been made to eliminate confusing language and create a simple, easy-to-read document.

### CUSTOMER INFORMATION

FULL LEGAL NAME: Stock Development LLC
STREET ADDRESS: 2647 Professional Cir
CITY: Naples   STATE: FL   ZIP: 34119   PHONE: ___   FAX: ___
BILLING NAME (IF DIFFERENT FROM ABOVE): ___
BILLING STREET ADDRESS: ___
CITY: ___   STATE: ___   ZIP: ___   FEDERAL TAX I.D.#: ___   E-MAIL: ___
EQUIPMENT LOCATION (IF DIFFERENT FROM ABOVE): ___

### MAKE/MODEL NO./ACCESSORIES

See Equipment List

SERIAL NO.: ___   STARTING METER: ___

*Florida documentary stamp tax required by law in the amount of $361.09 has been paid or will be paid directly to Dept. of Revenue Certificate of Registration #41-1400571-78001 (201.133(2), F.S.)*

### LEASE TERMS | LEASE PAYMENT AMOUNT | SECURITY DEPOSIT

Term in Months: **39** (mos.)
**39** Payments of $ **2645.00** (Plus Applicable Taxes)
Lease Payment Period is Monthly Unless Otherwise Indicated.
$ **0** (Plus Applicable Taxes)

Payment includes **55,000** B&W copies per month — Overages billed at $ **.039** per B&W copy ☑ Monthly OR ☐ Quarterly
Payment includes **4,000** Color copies per month — Overages billed at $ **.13** per Color copy ☑ Monthly OR ☐ Quarterly

END OF LEASE OPTIONS: You will have the following options at the end of the original term, provided the Lease has not terminated early and no event of default under the Lease has occurred and is continuing. 1. Purchase the Equipment for the Fair Market Value. 2. Renew the Lease per paragraph 1. 3. Return Equipment as provided in Paragraph 8.

**THIS IS A NONCANCELABLE / IRREVOCABLE AGREEMENT. THIS AGREEMENT CANNOT BE CANCELED OR TERMINATED.**

### OWNER ACCEPTANCE

DATED: 11-13-07   OWNER: AXSA Document Solutions, Inc.   SIGNATURE: Kristen Fairchild   TITLE: Sr. Doc Analyst

### CUSTOMER ACCEPTANCE

DATED: 10/29/07   CUSTOMER: Stock Development LLC   SIGNATURE: X [signed]   TITLE: VP of Finance

### GUARANTY

As additional inducement for us to enter into this Agreement, the undersigned ("you") unconditionally, jointly and severally, personally guarantees that the customer will make all payments and meet all obligations required under this Agreement and any supplements fully and promptly. You agree that we may make other arrangements including compromises or settlement with the customer and you waive all defenses and notice of these changes and will remain responsible for the payment and obligations of this Agreement. We do not have to notify you if the customer is in default. If the customer defaults, you will immediately pay in accordance with the default provision of the Agreement, all sums due under the terms of the Agreement and will perform all the obligations of the Agreement. If it is necessary for us to proceed legally to enforce this guaranty, you expressly consent to the jurisdiction of the court set out in paragraph 15 and agree to pay all costs, including attorneys fees incurred in enforcement of this guaranty. It is not necessary for us to proceed first against the customer before enforcing this guaranty. By signing this guaranty, you authorize us to obtain credit bureau reports for credit and collection purposes.

PRINT NAME OF GUARANTOR: ___   SIGNATURE: X ___   DATED: ___

### ACCEPTANCE OF DELIVERY

You certify that all the equipment listed above has been furnished, that delivery and installation has been fully completed and satisfactory. Further, all conditions and terms of this Agreement have been reviewed and acknowledged. Upon your signing below, your promises herein will be irrevocable and unconditional in all respects.

DATE OF DELIVERY: 10/29/07   CUSTOMER: Stock Development LLC   SIGNATURE: X [signed]   TITLE: VP of Finance

**EXHIBIT A**

1. **AGREEMENT:** You agree to rent from us the personal property set forth on the face of this Value Lease Agreement and as modified by supplements to this Agreement from time to time signed by you and us (such property and any upgrades, replacements, repairs and additions referred to as "Equipment") for business purposes only. You agree to all of the terms and conditions contained in this Agreement and any supplement, which together are a complete statement of our Agreement regarding the listed Equipment ("Agreement") and supersedes any purchase order or outstanding invoice. This Agreement may be modified only by written Agreement and not by course of performance. This Agreement becomes valid upon execution by us and will begin on the rent commencement date which will be the date of delivery, installation, and acceptance of the Equipment by you and will continue for the number of consecutive months shown. The term will be extended automatically for successive 12-month terms unless you send us written notice you do not want it renewed at least ninety (90) days but no more than one hundred twenty (120) days before the end of any term. If any provision of this Agreement is declared unenforceable in any jurisdiction, the other provisions herein shall remain in full force and effect in that jurisdiction and all others. You agree that a facsimile copy of this Agreement with facsimile signatures may be treated as an original and will be admissible as evidence of this Agreement.

2. **RENT:** Rent will be payable in installments, each in the amount of the Lease Payments, plus copy charge for additional metered copies in excess of the agreed monthly minimum number of copies plus any applicable sales tax, use tax, plus 1/12th of the amount estimated by us to be personal property tax on the Equipment for each year of this Agreement. You will pay the security deposit on the date you sign this Agreement. Subsequent installments will be payable on the first day of each Lease Payment period shown beginning after the first Lease Payment period. The Lease Payable for the month of rent commencement shall be prorated from the monthly rental amount set forth above. We will have the right to apply all sums, received from you, to any amounts due and owed to us under the terms of the this Agreement. In the event this Agreement is not fully completed, the security deposit will be retained by us to compensate us for our documentation, processing and other expenses. If for any reason, your check is returned for nonpayment, a $20.00 bad check charge will be assessed.

3. **MAINTENANCE AND SUPPLIES:** The charges established by this Agreement include payment for the use of the designated Equipment and accessories, maintenance (during normal business hours); inspection, adjustment, parts replacement, drums and cleaning material required for the proper operation, as well as toner and developer. Paper and staples must be separately purchased by customer. The per impression charge and overage per impression charge are based upon an 8 1/2"x11" letter size impression with an average 5% image fill, or its equivalent. If we determine that you have used 15% more consumable supplies than normal (as determined by the manufacturer's specifications) to produce copies, you agree to pay us an amount from time to time which may be necessary to offset such increased usage. You agree to pay at published rates for support required for printer applications or network service, repairs outside of normal business hours, or service required because of your negligence or improper operation of Equipment.

4. **OWNERSHIP OF EQUIPMENT:** Except for Agreements with $1.00 purchase option, we are the Owner of the Equipment and have sole title to the Equipment (excluding software). You agree to keep the Equipment free and clear of all liens and claims.

5. **WARRANTY DISCLAIMER:** WE MAKE NO WARRANTY EXPRESS OR IMPLIED, INCLUDING THAT THE EQUIPMENT IS FIT FOR A PARTICULAR PURPOSE OR THAT THE EQUIPMENT IS MERCHANTABLE. YOU AGREE THAT YOU HAVE SELECTED EACH ITEM OF EQUIPMENT BASED UPON YOUR OWN JUDGMENT AND DISCLAIM ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY US.

6. **LOCATION OF EQUIPMENT:** You will keep and use the Equipment only at your address shown above and you agree not to move it unless we agree to it. At the end of the Agreement's term, you will return the Equipment to a location we specify at your expense, in retail resaleable condition, full working order, and in complete repair. We have the right to inspect the Equipment at any time during normal business hours.

7. **LOSS OR DAMAGE:** You are responsible for the risk of loss or for any destruction of or damage to the Equipment. No such loss or damage relieves you from the payment obligations under this Agreement. You agree to promptly notify us in writing of any loss or damage. In the event of total loss or damage beyond repair you will then pay to us the present value of the total of all unpaid Lease Payments for the full term plus the estimated fair market value of the Equipment at the end of the originally scheduled term, all discounted at three percent (3%) per year. Any proceeds of insurance will be paid to us and credited, at our option, against any loss or damage.

8. **COLLATERAL PROTECTION AND INSURANCE:** You agree to keep the Equipment fully insured against loss with us as sole loss payee in an amount not less than replacement cost until this Agreement is terminated. You also agree to obtain a general public liability insurance policy from anyone who is acceptable to us and to include us as an insured on the policy. You agree to provide us certificates or other evidence of insurance acceptable to us, before this Agreement begins or, we will enroll you in our property damage coverage program and bill you a property damage surcharge as a result of our increased administrative costs and credit risk on which we may make a profit. As long as you are current at the time of the loss (excluding losses resulting from acts of God), the replacement value of the Equipment will be applied against any loss or damage as per paragraph 7. You must be current to benefit from the property damage surcharge program. NOTHING IN THIS PARAGRAPH WILL RELIEVE YOU OF YOUR RESPONSIBILITY FOR LIABILITY INSURANCE COVERAGE ON THIS EQUIPMENT.

9. **INDEMNITY:** We are not responsible for any loss or injuries caused by the installation or use of the Equipment. You agree to hold us harmless and reimburse us for loss and to defend us against any claim for losses or injury caused by the Equipment. This indemnification will continue after the termination of this Agreement.

10. **TAXES AND FEES:** You agree to pay when due all taxes (including personal property tax, fines and penalties) relating to this Agreement or the Equipment. If we pay any of the above for you, you agree to reimburse us and to pay us a processing fee for each payment we make on your behalf. You also agree to pay us any filing fees prescribed by the Uniform Commercial Code or other law and reimburse us for all costs involved in completing this transaction. You further agree to pay us $59.50 on the date the first Lease Payment is due. If the total sum of the payments exceeds $75,000, the origination fee will be $79.50. You shall pay Vendor a supply delivery charge on a monthly basis not to exceed $3.00 per machine, plus applicable taxes. You will indemnify us on an after-tax basis against the loss of any tax benefits anticipated at the commencement date arising out of your acts or omissions.

11. **ASSIGNMENT:** YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN OR SUBLEASE THE EQUIPMENT OR THIS AGREEMENT. We may sell, assign, or transfer this Agreement without notice. You agree that if we sell, assign, or transfer this Agreement, the new Owner will have the same rights and benefits that we have now and will not have to perform any of our obligations. You agree that the rights of the new Lessor will not be subject to any claims, defenses, or set offs that you may have against us.

12. **DEFAULT AND REMEDIES:** If you do not pay any Lease Payment or other sum due to us or other party when due or if you break any of your promises in the Agreement or any other Agreement with us, you will be in default. If any part of payment is late, you agree to pay a late charge of 15% of the payment which is late or if less, the maximum charge allowed by law. If you are ever in default, we may retain your security deposit and at our option, we can terminate or cancel this Agreement and require that you pay (1) the monthly payments due and to become due through the remainder of the term (discounted at 3%); (2) the estimated average Fair Market Value of similar Equipment of like age; (3) and return the Equipment to us to a location designated by us. We may recover interest on any unpaid balance at the rate of 18% per annum. We may also use any of the remedies available to us under Article 2A of the Uniform Commercial Code as enacted in the State of Lessor or its Assignee's principal place of business or any other law. If we refer this Agreement to an attorney for collection, you agree to pay our reasonable attorney's fees and actual court costs. If we have to take possession of the Equipment, you agree to pay the cost of repossession. The net proceeds of the sale of any repossessed Equipment will be credited against what you owe us relating to any claim arising under this Agreement including, but not limited to, or referral for collection. YOU AGREE THAT WE WILL NOT BE RESPONSIBLE TO PAY YOU ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES FOR ANY DEFAULT BY US UNDER THIS AGREEMENT. You agree that any delay or failure to enforce our rights under this Agreement does not prevent us from enforcing any rights at a later time. It is further agreed that your rights and remedies are governed exclusively by this Agreement and you waive lessee's rights under Article 2A (508-522) of the UCC.

13. **UCC FILINGS:** You grant us a security interest in the Equipment if this Agreement is deemed a secured transaction and you authorize us to record a UCC-1 financing statement or similar instrument, and appoint us your attorney-in-fact to execute and deliver such instrument, in order to show our interest in the Equipment.

14. **SECURITY DEPOSIT:** The security deposit is non-interest bearing and is to secure your performance under this Agreement. Any security deposit made may be applied by us to satisfy any amount owed by you, in which event you will promptly restore the security deposit to its full amount as set forth above. If all conditions herein are fully complied with and provided you have not ever been in default of this Agreement per paragraph 12, the security deposit will be refunded to you after the return of the Equipment in accordance with paragraph 6.

15. **CONSENT TO LAW, JURISDICTION, AND VENUE:** This Agreement shall be deemed fully executed and performed in the State of Lessor or its Assignee's principal place of business and shall be governed by and construed in accordance with its laws. If the Lessor or its Assignee shall bring any judicial proceeding in relation to any matter arising under the Agreement, you irrevocably agree that any such matter may be adjudged or determined in any court or courts in the state of the Lessor or its Assignee's principal place of business, or in any court or courts in Customer's state of residence, or in any other court having jurisdiction over you or your assets, all at the sole election of the Lessor. You hereby irrevocably submit generally and unconditionally to the jurisdiction of any such court so elected by Lessor in relation to such matters. You waive trial by jury in any action between us.

16. **OVERAGES AND COST ADJUSTMENTS:** You agree to comply with any billing procedures designated by us, including notifying us of the meter reading at the end of each month. You may not take any reduction, recoupment, defense or set off against impression charges or amounts due for any reason whatsoever. Lessor has the right to increase the impression charge on an annual basis.

17. **UPGRADE/DOWNGRADE PROVISION:** AFTER INCEPTION OF THE AGREEMENT AND UPON YOUR REQUEST, WE MAY REVIEW YOUR IMPRESSION VOLUME AND PROPOSE OPTIONS FOR UPGRADING OR DOWNGRADING TO ACCOMMODATE YOUR NEEDS.

18. **TRANSITION BILLING:** In order to facilitate an orderly transition, including installation and training, and to provide a uniform billing cycle, the "Effective Date" of this Agreement will be at our discretion any date within thirty (30) days following installation. Customer agrees to pay a prorated amount for the period between the Commencement Date (delivery, installation and acceptance date) and the Effective Date. This payment for the transition period will be based on the base minimum usage payment prorated on a 30 day calendar month and will be added to the Customer's first invoice.

19. **METER; ELECTRIC SERVICES:** You agree to provide adequate space without charge at the Equipment location for the Equipment, adequate electricity (including, if necessary, a dedicated 110 or 220 volt line), an electrical surge suppressor with a UL-1449 rating or better, and reasonable storage for supplies to be used with the Equipment. Most Equipment will be connected to an automatic meter reading device which will report the number of impressions made on the equipment each month and upon which monthly invoices will be based. If an automatic meter reading device is not installed and otherwise upon request, You will provide Us, by telephone with the actual meter reading on the 20th day of each calendar month, provided that We may estimate the number of impressions used if such meter reading is not received by us within 7 days. The estimated charge for excess impressions shall be adjusted upon receipt of actual meter readings.

20. **LESSEE GUARANTY:** You agree to submit the original master lease documents with the security deposit to the Lessor via overnight courier the same day of the facsimile transmission of the lease documents. Should we fail to receive these originals, you agree to be bound by a faxed copy of this Agreement with appropriate signatures on both sides of the document. Lessee waives the right to challenge in court the authenticity of a faxed copy of this Agreement and the faxed copy shall be considered the original and shall be the binding Agreement for the purposes of any enforcement action under paragraph 12.

**FOR MUNICIPALITIES ONLY**

21-A. **CUSTOMER COVENANTS:** the Customer covenants and warrants that (1) it has, in accordance with the requirements of law, fully budgeted and appropriated sufficient funds for the current budget year to make the payments scheduled to come due and to meet its other obligations under the Agreement and such funds have not been expended for other purposes; and
(2) that there is no action, suit, proceeding or investigation pending, or threatened in any court or other tribunal or competent jurisdiction, state or federal or before any public board or body, which in any way would (a) restrain or enjoin the delivery of the Agreement or the ability of the Customer to make its Base Payments (as set out above); (b) contest or affect the authority for the execution or delivery of, or the validity of, the Agreement; or (c) contest the existence and powers of the Customer; nor is there any basis for any such action, suit, proceeding or investigation; and
(3) That the Equipment will be operated and controlled by the Customer and will be used for essential government purposes and will to be essential for the term of the Agreement.
(4) Customer has not previously terminated a rent for non-appropriation, except as specifically described in a letter appended hereto.

21-B. **SIGNATURES:** Each signor (two if monthly payment exceeds $1,200) warrants that he/she is fully conversant with the governing relevant legal and regulatory provisions and has full power and authorization to bind Customer. Signor(s) for Customer further warrant(s) its governing body has taken the necessary steps; including any legal bid requirements, under applicable law to arrange for acquisition of the Equipment; the approval and execution has been in accordance with all applicable open meeting laws; and that a resolution of the governing body of Customer authorizing execution of the Agreement has been duly adopted and remains in full force and effect.

21-C. **NON APPROPRIATION:** In the event Customer is in default under the Agreement because:
1. Funds are not appropriated for a fiscal period subsequent to the one in which the Agreement was entered into which are sufficient to satisfy all of Customer's obligations under the Agreement during said fiscal period;
2. Such non-appropriation did not result from any act or failure to act of customer;
3. Customer has exhausted all funds legally available for all payment due under the Agreement; and
4. There is no other legal procedure by which payment can be made to Owner.
Then, provided that (a) Customer has given Owner written notice of the occurrence of paragraph 1 above thirty (30) days prior to such occurrence; (b) Owner has received a written opinion from Customer's counsel verifying the same within ten (10) days thereafter; and (c) the Customer does not directly or indirectly purchase, rent or in any way acquire any services or equipment supplied or provided for hereunder; upon receipt of the equipment delivered to a location designated by Owner, at Customer's expense, Owners remedies for such default shall be to terminate the Agreement at the end of the fiscal period during which notice is given; retain the advance payments, if any; and/or sell, dispose of, hold, use or rent the equipment as Owner in its sole discretion may desire, without any duty to account to Customer.

## ASSIGNMENT

RE: Agreement No. 128796-000, dated 10-29, 2007

between Stock Development LLC

as Customer and the undersigned as nominal Owner (the "Agreement").

**The undersigned hereby sells, assigns, and transfers to U.S. Bancorp Business Equipment Finance Group all of the undersigned's right, title, and interest in and to (a) the equipment covered by the Agreement and (b) the undersigned's rights as Owner under the Agreement, including the right to receive rent thereunder.**

AXSA Document Solutions, Inc.
(Name of Owner)

_Kristen Fairchild_
Signature

Senior Documentation Analyst
Title

11-13-07
Date